UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 07-61862-CIV-UNGARO

WILMINE ALMONOR, individual and on
behalf of others similarly situated,

    Plaintiff,

v.

BANKATLANTIC BANCORP, INC., et al.,

    Defendants.
_____/

## ORDER DENYING MOTION FOR CLASS CERTIFICATION

THIS CAUSE is before the Court upon Plaintiff's Motion for Class Certification, filed January 22, 2009 (D.E. 49). Defendants filed a response in opposition on February 25, 2009 (D.E. 61), to which Plaintiff replied on March 11, 2009 (D.E. 67). The matter is now ripe for disposition.

THE COURT has considered the Motion, the pertinent portions of the record, and is otherwise fully advised in the premises.

### BACKGROUND[1]

Plaintiff filed this putative class action suit under the Employee Retirement Income Security Act of 1972 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, on behalf of the BankAtlantic Securities Plus Plan, seeking damages and equitable relief for Defendants' alleged breaches of

---

[1] Based on substantially the same facts alleged in this action, certain plaintiffs have also brought a suit for violations of federal securities laws and a shareholder derivative action. *See Hubbard v. BankAtlantic Bancorp, Inc., et al.*, Case No. 07-61542-CIV-UNGARO (S.D. Fla. Oct. 29, 2007); *Hugo v. Levan, et al.*, 08-60374-CIV-UNGARO (S.D. Fla. July 3, 2008).

1

fiduciary duty beginning November 9, 2005 to the present (the "Class Period"). The original complaint was filed on December 20, 2007, (D.E. 1), and an amended complaint was filed on April 7, 2008 (D.E. 26). On January 29, 2009, this Court granted in part and denied in part Defendants' Motion to Dismiss the Amended Complaint. (D.E. 53.) The Court also granted Plaintiff leave to file a second amended complaint. (*Id.*) On February 18, 2009, Plaintiff filed her Second Amended Class Action Complaint (D.E. 57, the "Second Amended Complaint"), which Defendants again moved to dismiss (D.E. 69). On July 15, 2009, the Court granted in part and denied in part Defendants' second motion to dismiss. (D.E. 82, the "Order").

BankAtlantic Bancorp, Inc. (together with its subsidiaries, herein referred to as "BankAtlantic") is a financial services company, which offers a variety of deposit products, and its lending portfolio is comprised of commercial real estate loans, commercial business loans, standby letters of credit and commitments, small business loans, and residential loans. (Order 2.) In May 1987, BankAtlantic adopted the BankAtlantic Security Plus Plan (the "Plan") for the purpose of providing retirement and related benefits to eligible employees and their beneficiaries. (Sec. Am. Compl. ¶ 33.) Plaintiff is a former employee of BankAtlantic and a participant in the Plan. (*Id.* ¶ 13.)

The Plan maintains individual accounts for each participant, which are credited with the participant's share of contributions, including participant and BankAtlantic contributions, and any income, loss, appreciation, and depreciation on the participant's investments. (*Id.* ¶ 42.) Plan fiduciaries provide a menu of investment options for participants, and participants direct that their accounts be invested in specific assets, specific funds, or other investments. (*Id.* ¶ 45; Order 5.) Plan fiduciaries may add, delete, or restrict the investments alternatives offered to

2

participants. (Sec. Am. Compl. ¶ 45.)

The Plan is permitted, but not required, to offer participants BankAtlantic stock as one of their investment alternatives. (*Id.*) From the beginning of the Class Period until January 1, 2008, Plan participants could choose to invest in the BankAtlantic stock fund. (*Id.* ¶ 2.) After January 1, 2008, participants who had already invested in BankAtlantic stock fund were allowed to retain their stock, but it was no longer offered as an investment alternative in the Plan. (*Id.*) At all relevant times, participants were free to change their investment choices, and BankAtlantic did not provide any incentives to invest in any one fund or, in particular, the BankAtlantic stock fund.[2]

At the beginning of the Class Period, on November 9, 2005, BankAtlantic stock was trading at $14.52. (Sec. Am. Compl. ¶ 83.) During the Class Period, Defendants engaged in reckless and deceptive lending practices in an effort to grow BankAtlantic's market share of commercial real estate loans. (*Id.* ¶ 68.) These practices were never disclosed to BankAtlantic investors. (*See id.* ¶ 85.) Instead, Defendants repeatedly emphasized to the public that BankAtlantic adhered to conservative lending practices and maintained high quality loan portfolios. (*Id.*) Defendants also failed to adequately reserve for losses associated with these dubious loans during the Class Period, which allowed BankAtlantic to make loans beyond its actual capital capacity. (*Id.* ¶¶ 68, 86.) As a result, BankAtlantic's publicly-available financial statements during the Class Period contained materially understated loan loss reserves and materially overstated net income. (*See, e.g., id.* ¶¶ 93, 106.) In short, BankAtlantic stock

---

[2] This undisputed fact and its supporting materials are found in Defendants' Memorandum in Opposition to Plaintiff's Motion for Class Certification (D.E. 61, the "Response to Class Certification" 3).

3

appeared to be a better investment than it really was.

On October 25, 2007, BankAtlantic issued a press release that finally revealed the full extent of impairment in the company's commercial real estate lending portfolio as a result of Defendants' deceptive and reckless lending and accounting practices. (*Id.* ¶146.) For the first time, investors were informed that the credit quality of BankAtlantic's largest loan portfolio had substantially deteriorated. (*Id.* ¶¶ 68, 146-148.) BankAtlantic stock dropped that day from an opening price of $7.45 to a closing price of $4.72. (*Id.* ¶ 150.) However, as explained in more detail below, Plaintiff sold all of her units in the BankAtlantic stock before this time. On February 17, 2009, (the day before Plaintiff filed her Second Amended Complaint) BankAtlantic stock closed at $1.30. (*Id.* ¶ 151.)

Plaintiff does not represent in her Second Amended Complaint when, if ever, she invested in the BankAtlantic stock fund as a participant in the Plan, or at what price she bought or sold units in the BankAtlantic stock fund. The record, however, reflects that Plaintiff filled out a Plan enrollment form in 2004 wherein she elected to direct 20% of her withheld wages into the BankAtlantic stock fund.[3] By November 9, 2005 (the beginning of the Class Period), Plaintiff had $240.32 invested in the BankAtlantic stock fund.[4] Plaintiff never changed her investment elections before or during the Class Period.[5] As a result, she received monthly credits of units in the BankAtlantic stock fund until June 8, 2007, when she sold all of her assets in the

---

[3] Defs' Resp. Class Cert. 4.

[4] *Id.* It is not clear, however, how many units Plaintiff held in the BankAtlantic stock fund at this time.

[5] *Id.*

4

Plan, including 47.040 units in the BankAtlantic stock fund.[6] The value of the 47.040 units at the time of the sale was $407.87.

Plaintiff seeks damages and equitable relief under Sections 502(a)(2) and 502(a)(3) of ERISA, 29 U.S.C. §§ 1132(a)(2)-(3). The Second Amended Complaint contains six, somewhat overlapping, counts. First, Plaintiff claims Defendants breached their duty to loyally and prudently manage the Plan because they continued to offer BankAtlantic stock as an investment alternative despite knowing that it was artificially inflated. Second, Plaintiff claims that certain insider Defendants breached their duty to inform Plan participants of material information regarding the value of BankAtlantic stock and the company's financial health, thereby depriving participants the opportunity to make informed investment decisions. Third, Plaintiff claims certain Defendants breached their duty to monitor the actions of their co-fiduciaries by failing to provide information to their co-fiduciaries that was necessary for them to prudently manage the Plan and to appreciate the risk that the artificially-inflated BankAtlantic stock posed to investors. Fourth, Plaintiff claims Defendants breached their duty of loyalty by placing their own interests before those of the Plan and its participants. Fifth, Plaintiff claims that certain insider Defendants are liable for their co-fiduciaries' breaches. Finally, Plaintiff claims that equitable relief is appropriate to the extent that BankAtlantic is not found to have been a Plan fiduciary because BankAtlantic benefitted from the breach of fiduciary duties of other Defendants.

In her present Motion, Plaintiff asks the Court to certify as a class "all persons who are participants in, or beneficiaries of, the BankAtlantic Security Plus Plan (the "Plan") at any time before November 9, 2005 to the present (the "Class Period"), and whose accounts included

---

[6] *Id.* Plaintiff left her employment with BankAtlantic in the spring of 2007. *Id.*

5

investments in common stock of BankAtlantic Bancorp, Inc. ("BankAtlantic Stock")." (Sec. Am. Compl. ¶ 162; Mot. 1.) Plaintiff also seeks an order certifying her as class representative and the appointment of her counsel as class counsel.

Defendants raise several arguments in opposition to Plaintiff's Motion. First, Defendants argue that Plaintiff lacks standing to assert any claim on behalf of the Plan. The Court, however, rejected this standing argument in its Order on Defendants' second motion to dismiss and does not repeat that discussion here. Second, Defendants argue that Plaintiff fails to satisfy the class certification requirements under Federal Rule of Civil Procedure 23. The Court will address whether Plaintiff has met her burden under Rule 23 below.

## STANDARD OF REVIEW

A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir. 1984). A plaintiff seeking class certification carries the burden of proof. *Rustein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000). To qualify for class certification, the plaintiff must prove that all four requirements of Rule 23(a) are met and at least one of the standards of Rule 23(b) is appropriate for the relief sought. *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001).

There are four prerequisites under subsection (a) of Rule 23: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These four prerequisites are commonly referred to as

"numerosity, commonality, typicality, and adequacy of representation." *Valley Drug Co. v. Geneva Pharm., Inc.,* 350 F.3d 1181, 1188 (11th Cir. 2003). Additionally, a court may only certify a class action if at least one of the three alternative requirements of subsection (b) of Rule 23 has been met. *Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1279 (11th Cir. 2000).

In determining whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1569 (11th Cir. 1992). "Although a court should not determine the merits of a case at the class certification stage, the court can and should consider the merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be certified." *Valley Drug,* 350 F.3d at 1188 n.15; *see also Hudson v. Delta Airlines,* 90 F.3d 451, 457 (11th Cir. 1996) (stating it is sometimes necessary to probe behind the pleadings before coming to rest on the certification question).

## ANALYSIS

At the outset, the Court finds that Plaintiff's class definition is overly broad and unworkable. It encompasses those who could not have suffered any harm from allegations in the Second Amended Complaint. For example, Plan participants who purchased units in the BankAtlantic stock fund *after* October 25, 2007 would fall within the class, notwithstanding the fact that (i) the "full truth" had already been revealed by that time, and (ii) there are no factual allegations of Defendants' wrongdoing after that time.

Even if the Court were to consider, however, a more narrow class definition (*e.g.,* only those whose Plan participants who acquired an interest in the BankAtlantic stock fund before October 25, 2007), Plaintiff cannot not met her burden under Rule 23(a) because she not an adequate representative. Rule 23(a)(4) requires Plaintiff, as the proposed class representative, to

fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). This "adequacy of representation" analysis encompasses two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representative will adequately prosecute the action." *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003). With regards to the first inquiry, the Eleventh Circuit has stated:

> A fundamental conflict of interest exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class. In such a situation, the named representative cannot vigorously prosecute the interests of the class through qualified counsel because their interests are actually or potentially antagonistic to, or in conflict with, the interests and objectives of other class members.

*Id.* (quotations omitted). An antagonistic interest does not need to *actually* exist between the representative and the class in order for class certification to be inappropriate; a *potential* antagonistic interest is enough. *Id.* at 1194. The Court finds that because Plaintiff arguably benefitted from the same conduct that harmed other members of the class, she cannot vigorously prosecute the interests of the class.

As stated above, Plaintiff claims that the BankAtlantic stock fund was an imprudent investment alternative because Defendants engaged in risky lending and accounting practices. Plaintiff also claims that certain insider Defendants made material misrepresentations and omissions regarding these practices, which artificially inflated the value of the BankAtlantic stock fund and precluded Plan participants from making meaningful investment decisions. During this period of deception and artificial inflation, Plaintiff divested her interests in the BankAtlantic stock fund. Months later, on October 25, 2007, the full extent of impairment of

BankAtlantic's commercial loan portfolio was disclosed and Defendants' deceptive practices were publicly recognized. This revelation caused the value of BankAtlantic stock to plummet.

Thus, Defendants' breaches arguably conferred a net benefit on Plaintiff because they allowed Plaintiff to receive more than she would have if the stock had not been artificially inflated.[7] Meanwhile, those class members who did not divest their interests in the BankAtlantic stock fund during the period of artificial inflation arguably suffered a harm due to Defendants' breaches. In this way, the class collapses into distinct groups of winners and losers, as there is a fundamental conflict between those who were harmed and those who were benefitted by Defendants' breaches. *See id.*; *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (denying class certification where some putative class members received a benefit while other experienced a harm from the same conduct). Additionally, the Court notes that at least two of the named insider Defendants that Plaintiff alleges made material misrepresentations and omissions (John E. Abdo and Alan B. Levan) fall within the class. (Resp. 4.) For all of these reasons, Plaintiff's economic interests and objectives differ in a significant way from the economic

---

[7] The Court has rejected Defendants' argument Plaintiff lacked standing because their breaches conferred a "net benefit" on her. (Order 12.) The Court held that the question of whether Plaintiff received a "net benefit" was a question of damages and was irrelevant to whether she suffered an injury because each alleged breach of fiduciary duty was an invasion of personal entitlement she holds as an ERISA plan participant. (Order 9-10.) However, the Court must now consider whether the Defendants' breaches conferred a net benefit on Plaintiff but harmed other class members because this issue is relevant to whether there is a fundamental class conflict. *See Valley Drug*, 350 F.3d at 1188 (stating that the district court "was *required* to evaluate whether the 'adequacy of representation' requirement could be satisfied despite the fact that most significant members of the certified class arguably experienced a net gain from the conduct alleged") (emphasis added).

interests and objectives of class members she purports to represent.[8] *See id.* at 1190; *see also Pickett v. Iowa Beef Processors,* 209 F.3d 1276, 1280 (11th Cir. 2000) (holding that "a class cannot be certified when it . . . consists of members who benefit from the same acts alleged to be harmful to other members of the class"); *Grimes v. Fairfield Resorts, Inc.*, No. 06-14363, 2007 WL 245128, *3 (11th Cir. Jan. 30, 2007) (noting that it is not only economic conflicts of interest that will defeat certification, but that the conflict's inquiry must focus on whether the same conduct harmed some class members and benefitted others); *Philips v. Klassen,* 502 F.2d 362, 367 (D.C. Cir. 1974) (stating that the foundation of maintaining a class action is undermined when the complained of activity confers harms or benefits, depending on the circumstances of the individual). Therefore, class certification under these circumstances is inappropriate.

In sum, the Court finds that Plaintiff is not an adequate representative and her claims fail under Rule 23(a).[9] Even assuming that this Court could revise and limit an overly broad class definition *sua sponte,* the Court sees no reason to do so here. *See, e.g., Nix v. Fulton Lodge No. 2 of Int'l Assoc. of Machinists & Aerospace Workers*, 452 F.2d 794, 797 (5th Cir. 1972) (noting

---

[8] The Court has considered but rejects Plaintiff's argument that because she is bringing her claims in a representative capacity under Section 502(a)(2) of ERISA there are no individual issues that could preclude class certification. (*See* Reply 6.) If the Court were to accept Plaintiff's argument, then any ERISA plaintiff could avoid their burden under Rule 23 and have a class certified by simply pleading a claim under Section 502(a)(2). Additionally, the Court notes that the plaintiff in the Eleventh Circuit case, *Piazza*, also brought his claims under Section 502(a)(2), and yet the Eleventh Circuit still undertook a rigorous Rule 23 analysis to determine whether class certification was appropriate. *See Piazza v. EBSCO Indus., Inc.*, 273 F.3d 1341 (11th Cir. 2001).

[9] As the Court finds that certification of Plaintiff's claims are inappropriate under Rule 23(a), it is unnecessary for the Court to address certification under Rule 23(b).

that the lower court had narrowed the class definition).[10] This case commenced December 20, 2007, there has been no discovery stay, and Plaintiff has had adequate time to discover relevant facts. The Court has already granted Plaintiff leave to amend her complaint once. She has the burden of proposing a class that meets the Rule 23 requirements and has failed to do so. This Court has no obligation to craft a new class to cure Plaintiff's deficiencies. *See Polo v. Goodings Supermarkets, Inc.*, 232 F.R.D 399, 409 (M.D. Fla. 2004) (refusing to revise an overly broad class definition *sua sponte* and denying leave to amend complaint).

## CONCLUSION

Accordingly, it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion for Class Certification (D.E. 49) is DENIED. It is further

ORDERED AND ADJUDGED that Defendants' Request for Oral Argument (D.E. 60) is DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 28th day of July, 2009.

*[signature]*

URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record

---

[10] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.