UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 07-61862-CIV-UNGARO/SIMONTON

WILMINE ALMONOR, individually and
on behalf of all others similarly situated,

    Plaintiff,

v.

BANKATLANTIC BANCORP, INC., *et al.*,

    Defendants.
_____/

**DEFENDANTS' RESPONSE TO PLAINTIFF'S PROPOSED PROCEDURAL SAFEGUARDS**

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Eugene E. Stearns
Richard B. Jackson
Adam M. Schachter
Gordon M. Mead, Jr.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile: (305) 789-3395

*Attorneys for Defendants*

## I. Introduction

Plaintiff's proposed procedural safeguards protect neither the interests of absent plan participants nor the integrity of the judicial process. There are no safeguards that could ever meet that burden. This Court has already twice determined that Plaintiff is a fundamentally inadequate class representative with economic interests and objectives at odds from the other plan participants. Order Denying Motion for Class Certification, DE 87, at 8-9; Order on Plaintiff's Motion for Reconsideration, DE 95, at 3-5.[1] Those same fundamental shortcomings — none of which are addressed, let alone cured, by the proposed safeguards — foreclose this Plaintiff from proceeding on behalf of the Plan.

In addition to the inherent conflict issues with this Plaintiff, the safeguards themselves are also fundamentally flawed, creating more problems than they solve. To begin with, the suggested notice is long overdue. This purported class action was filed more than two years ago, with the flawed class certification motion filed more than one year thereafter. The case is now set for trial, and the time for joinder lapsed long ago. Up to this point, the absent participants have had no opportunity to participate in this action, and likely do not even know of its existence. Attempting to notify these people at this late stage would significantly prejudice Defendants' and this Court's efforts to bring this case to a conclusion — exacerbated, of course, by this Court's correct determination that Plaintiff is a fundamentally inadequate representative.

For example, there would be a strong likelihood of multiple lawsuits in multiple fora. Or, even worse, absent participants might sit back and wait and see how this lawsuit plays out, satisfied with the knowledge that they could never be estopped from bringing another case asserting the same

---

[1] Insofar as Plaintiff did not appeal the class certification findings, the Court's rulings are now final and unappealable.

relief because this particular test Plaintiff has already been determined to be inadequate. Short of ensuring that this Plaintiff does not proceed in any sort of representative capacity, there are no possible safeguards to protect the interests of plan participants and the judicial process.

This Court should, therefore, rule that Plaintiff Almonor can prosecute these claims on behalf of herself, and no one else.

**II.     Plaintiff Should Not Be Permitted To Proceed On Behalf of the Plan.**

Although this Court ruled that Plaintiff could proceed under ERISA § 502(a)(2) without a certified class (subject to sufficient procedural safeguards), it is clear that the circumstances permitting such a case to proceed are extremely limited, if not unprecedented. Indeed, there is not a single published opinion in which a court actually adopted procedural safeguards permitting such a case to proceed. And, there is not a single instance in which an ERISA case, like this one, was permitted to proceed after class certification was denied.[2/]

---

[2/] With respect to the cases relied upon by this Court, none of those courts actually adopted procedural safeguards permitting the case to proceed. This Court already went further than *Thompson v. Avondale Industries, Inc.*, Case No. 99-3439, 2001 WL 1543497 (E.D. La. Nov. 30, 2001) — where the court did not even mention procedural safeguards — and properly recognized the need for such safeguards to protect absent plan participants and the integrity of the judicial process. Moreover, in *Thompson*, the court did not conduct even a cursory examination as to whether the plaintiff was an adequate representative. Here, in sharp contrast, the Court has (twice) ruled that Plaintiff is an inadequate representative, and that ruling directly implicates whether Plaintiff can represent the Plan adequately. Furthermore, *Thompson* was not an ERISA stock drop case like this one; it was an action challenging a decision by management to drastically reduce the defendant's ESOP in order to silence employees and eliminate labor union influence. Moreover, in *Thompson*, the representative issue was addressed by the parties at the outset of the case.

In *Bickley v. Caremark,* 361 F. Supp. 2d 1317 (N.D. Ala. 2004), the court dismissed the action and did not address the procedural safeguards issue. It was also not a stock drop case. *Brasley v. Fearless Farris Serv. Stations, Inc.*, No. V-08-173-S-BLW, 2009 WL 631460, at *10-11 (D. Idaho Mar. 9, 2009), which involved a Plan of only approximately thirty participants, was also not a stock drop case, though the court did request that the parties provide proposed procedural safeguards. Reviewing the docket of that case, however, reveals that the Court did not rule on the adequacy of the proposed safeguards. This case, by sharp contrast, involves a Plan with thousands of participants.

-2-

In *Coan v. Kaufman,* 457 F.3d 250 (2d Cir. 2006), a case upon which this Court principally relied, the Second Circuit held that procedural safeguards were possible, depending on the circumstances. But the Court wound up granting defendants' motion for summary judgment because the plaintiff had not taken any steps showing he could properly act in a representative capacity, and it was too late to do so any way. In so ruling, and relying on the common law of trusts, the Second Circuit recognized that "[o]rdinarily when a beneficiary brings suit against a trustee on behalf of the trust, other beneficiaries should be joined as parties either as plaintiffs or as defendants if their interests would be affected by the decree." *Id.* at 260 (citation omitted). *Coan* went on to recognize two exceptions to the general rule regarding joinder of parties:

> The first is where the absent parties are properly represented . . . The second exception to the general rule arises when the beneficiaries are very numerous so that the delay and expense of bringing them in becomes oppressive and burdensome. In such case they will not be deemed necessary parties where the trustee representing them is made a party. In the latter situation, a class action is the appropriate procedural device.

*Coan*, 457 F.3d at 260-261 (citations omitted).

The Eleventh Circuit has also made clear that common law trust principles require the joinder of absent participants. *See Tick v. Cohen*, 787 F.2d 1490 (11th Cir. 1986) (dismissing action for failing to join other beneficiaries). "As a general rule, all beneficiaries are persons needed for just adjudication of an action to remove trustees and require an accounting or restoration of trust assets." *Id*. The Eleventh Circuit further stated that "[i]n the event that the [plaintiffs] succeed on the merits, it is likely that the trust will be affected," and thus "in light of the relief requested, we find it difficult to envision any conceivable way to fashion a meaningful judgment which will not affect the absent beneficiaries' interests." *Id.* at 1494, 1495.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Plaintiff's proposal does not satisfy the general rule requiring joinder of all participants. In fact, Plaintiff does not even propose to join the hundreds of absent participants. Nor does Plaintiff even attempt to explain how their joinder might even be practicable. In any event, the deadline for joinder has come and gone.

Moreover, the aforementioned *Coan* exceptions are not applicable. As to the first, this Court has already determined that this Plaintiff is not an adequate representative, as Plaintiff has interests and objectives differing significantly from the other Plan members and the Plan itself. The second is inapplicable on its face, as the Court denied plaintiff's motion for class certification. Consequently, Plaintiff's proposal does not come close to satisfying the common law principles articulated by *Coan* and adopted by the Eleventh Circuit. Plaintiff cannot proceed on behalf of the Plan.

### III. This Court's Rulings on Plaintiff's Inadequacy Foreclose This Plaintiff From Proceeding On Behalf of the Plan.

The whole concept of potential safeguards flows from the notion that an action cannot "be brought in a "'representative capacity on behalf of the plan'" if the plaintiff does not take any steps to become a bona fide representative of *other interested parties*." *Coan*, 457 F.3d at 259 (citing *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n. 5 (1985) (emphasis added)). Here, those *interested parties* are the absent plan participants. Plaintiff has not, and could never, take adequate steps under the circumstances to act in a "representative capacity on behalf of the plan" because she is not an adequate representative, with interests inimical to the absent plan participants and thus the Plan itself. Simply put, the fundamentally inadequate cannot represent others.

Therefore, this Court's determination that Plaintiff is an inadequate representative compels the conclusion that safeguards cannot be adopted which would protect absent participants or the

integrity of the judicial process. Without adequacy of representation, there is no assurance that the interests of all beneficiaries will receive actual and efficient protection. *Coan*, 457 F.3d at 262. Moreover, without adequacy of representation, there is nothing to protect trustees (ERISA fiduciaries) against a multiplicity of actions from participants who claim that they are not bound by other actions. *See Coan*, 457 F.3d at 262.

If a Plan participant were to bring a subsequent lawsuit against the Defendants, the issue of collateral estoppel would likely arise. In light of this Court's class certification rulings as to this particular Plaintiff, it seems more than likely that the absent plan participants will argue they are not bound by the outcome of this litigation. *See, e.g., Taylor v. Sturgell,* 128 S. Ct. 2161, 2172-73 (2008) (finding representation of a party for preclusion purposes is only adequate if interests of non party and representative are aligned).[3/] This result would be prejudicial to Defendants and the Court.

For example, this Plaintiff might proceed with this action and secure an arguably favorable result on behalf of the Plan. Another participant might choose to reap those benefits. However, if another participants were not satisfied with the result, they could bring a separate action or actions arguing they are not bound by the earlier judgment due to inadequate representation. Facing multiple lawsuits on the same issues with inconsistent results or rulings, and with prospective participants waiting for more, Defendants would face an untenable situation. There are no procedural safeguards to cure this problem for this Plaintiff.

---

[3/] If preclusion were somehow found, the second participant would be bound by a judgment that was reached without his involvement or reliable safeguards for his or her interests.

### IV. Plaintiff's Proposed Safeguards Do Not Protect the Interests of Absent Plan Participants or the Integrity of the Judicial Process.

Plaintiff's proposed notice to other participants not only fails to overcome the Court's inadequacy determination, but is also way too late in the game. This action has been pending for nearly two years. None of the absent participants have had any opportunity to participate in this case (a circumstance of Plaintiff's creation since she had not previously raised the issue). The matter is set for trial and discovery is ongoing.

Furthermore, Plaintiff neither proposes a form of notice nor explains how to inform the plan participants of her inadequacy. Certainly, this Plaintiff has no place or right to "advise" Plan participants of the potential consequences of a "positive or adverse outcome" in this action. *See* Plaintiff's Submission at 2.[4]

Moreover, Plaintiff's notice purports to invite joinder of additional parties. But the deadline for joinder has already expired. The Court's recent scheduling order reaffirms that deadline. And, permitting joinder of additional parties at this point would impose extreme case management and administration issues, unduly burdening both the parties and the Court. Putting aside the time for preparation of the notice, it is indisputable that any eleventh hour joinders would, at this point, be joining this litigation at a far too advanced stage.[5] And, there could be hundreds if not thousands of such requests, any one of which might demand leadership of this claim on behalf of the Plan. All

---

[4] Indeed, the entire notion that Plaintiff is proposing safeguards which, among other things, purport to spend the Plan's money is defies logic, given that she has been found to be inadequate and is no longer even a member of the Plan.

[5] There might be even additional delays stemming from potential issues raised by these unknown third parties.

of these scenarios are both likely and extremely prejudicial to Defendants, and undermine the integrity of the judicial process.

Plaintiff proposal further highlights the chaos that would ensue by suggesting potential transfer and consolidation pursuant to the Rules of the Judicial Panel on Multidistrict Litigation. Plaintiff has no power to transfer actions which might be filed in other forums by others who have no interest in the matters being consolidated. Defendants, having litigated this case for more than two years already, should not be further victimized by these sorts of procedural hurdles and shenanigans at this late stage of the litigation.

As the Second Circuit noted in *Coan,* it is "far too late in the day to cure the procedural defects in her lawsuit." 457 F.3d at 262. The present situation is far worse, as Plaintiff not only let deadlines for joinder lapse, but led the Defendants and the Court on a misdirection through the class certification process.

Even if absent class members do not join this action immediately, notice could create an equally large mess. There is no requirement, nor could there be, that absent participants join or intervene in this litigation in this Court. Many of those participants or former participants are not even within the jurisdiction of this Court. As explained above, if absent participants fail to immediately join, given the Court's ruling as to inadequacy, any absent participant would almost assuredly argue against preclusion. Those participants could simply wait for the conclusion of this case, without worry or concern for the concerns of the Defendants, the Court, or even this Plaintiff, as the parties' and this Court's jurisdiction will be long gone.

Plaintiff argues that the relevant provisions of ERISA will minimize the risks of multiple lawsuits. But that argument does not survive scrutiny. For instance, Plaintiff tries to sweep this

-7-

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

glaring problem away with the conclusory assertion that the Plan would be bound by any result and that subsequent litigants could only sue on their own behalf. Plaintiff's Submission at 4. But this misunderstands the fundamental basis of the trust law principles on which *Coan* and this Court relied — the representation of the actual participants of the Plan must, in fact, be adequate. No other analysis would make sense.[6] The Plan is not adequately represented by this Plaintiff and thus is not necessarily bound by any ruling in this litigation. And, if another participant were to choose to bring an action on behalf of the Plan, the argument would still exist (and likely prevail) that the Plan was not adequately represented. The Court's ruling that Plaintiff may not avoid the adequacy analysis by merely alleging he is asserting a claim on behalf of the Plan applies with equal force here.[7] *See* Order Denying Class Certification at 10, n. 8.

Plaintiff also argues that the Plan is permitted to release all legal and equitable claims against all Defendants in settlement of the 401(k) Plan's claims. Plaintiff's Submission at 4. But this presupposes that the Plan is adequately represented — which it is not. And, therefore, any beneficiary challenging such a settlement would likely be able to successfully argue that they are not precluded as a result of that inadequate representation.

---

[6] Plaintiff's citation to *Graden v. Conexant*, 496 F.3d 291 (3d Cir. 2007), is unhelpful. That the Plan takes legal title to any recovery does not change the fact that the participants are the true interested parties and must have been adequately represented. As stated above, that is precisely why common law trust principles require them to be joined or one of the other exceptions to be applicable. The Third Circuit highlighted this point by noting that in the ERISA context "the loss to participants is direct, as any recovery made "on behalf of the plan" must be paid out to the injured participant in the form of augmented benefit payments." 496 F.3d at 296, fn. 6.

[7] Plaintiff's assertion that any future actions for individuals would only be on their own behalf is not only incorrect, but actually highlights the risks of multiple lawsuits. Plaintiff is seeking to recover Plan wide relief, i.e. relief that would account for losses to individual participants' accounts. If, as Plaintiff is suggesting, individuals could still bring their own action and try to recover that same amount on his or her own behalf, there would still be the potential for double recoveries and inconsistent results.

-8-

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ■ 150 West Flagler Street, Suite 2200 ■ Miami, FL 33130 ■ (305) 789-3200

Plaintiff's argument as to the exhaustion of administrative remedies is equally unavailing. The premise of Plaintiff's entire position is that "the 401(k) Plan is allowing this action to proceed," but that presumes that Plaintiff is an adequate representative for the 401k plan in the first place — it has already been determined she is not. And this proceeding is not, in any event, an administrative remedy.[8]

**V.      Conclusion**

For the foregoing reasons, this Court should reject the proposed procedural safeguards and rule that Plaintiff cannot proceed on behalf of the Plan.[9]

---

[8] Undercutting her own argument, earlier in her memorandum, Plaintiff cites to *Bickley v. Caremark Rx, Inc.* for the proposition that "administrative remedies need not be exhausted to proceed on behalf of the Plan." Plaintiff's Submission at 4.

[9] As Defendants have previously maintained, the issue of whether Plaintiff should be permitted to proceed on behalf of the Plan is a threshold issue which would fundamentally change the nature of this litigation. Indeed, if this Plaintiff cannot proceed on behalf of the Plan, then this will once again be a case with an amount in controversy of approximately $400.

Respectfully Submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 789-3200
Facsimile:   (305) 789-3395

s/ Eugene E. Stearns
EUGENE E. STEARNS
Florida Bar No. 149335
estearns@stearnsweaver.com
RICHARD JACKSON
Florida Bar No. 898910
rjackson@stearnsweaver.com
ADAM M. SCHACHTER
Florida Bar No. 647101
aschachter@stearnsweaver.com
GORDON M. MEAD, JR.
Florida Bar No. 49896
gmead@stearnsweaver.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF or other approved means.

s/ Adam M. Schachter
ADAM M. SCHACHTER

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ■ 150 West Flagler Street, Suite 2200 ■ Miami, FL 33130 ■ (305) 789-3200

**SERVICE LIST**

*Wilmine Almonor v. BankAtlantic Bancorp, Inc., et al.*
CASE NO. 07-61862-CIV-UNGARO
United States District Court for the Southern District of Florida

Maya S. Saxena
msaxena@saxenawhite.com
Joseph E. White III
jwhite@saxenawhite.com
Christopher S. Jones
cjones@saxenawhite.com
SAXENA WHITE, PA
2424 N. Federal Highway
Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile:  (561) 394-3382

Thomas J. McKenna
tjmckenna@gaineyandmckenna.com
GAINEY & McKENNA
295 Madison Avenue
New York, NY 10017
Telephone: (212) 983-1300
Facsimile:  (212) 983-0383

Lee Squitieri
lee@sfclasslaw.com
SQUITIERI & FEARON
32 E. 57th Street
12th Floor
New York , NY 10022
Telephone: (212) 421-6492
Facsimile: (212) 421-6553

*Attorneys for Plaintiff*